UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-2884-white

UNITED STATES OF AMERICA

vs.

IGNACIO ZARATE-ROSALES,
a/k/a "Jose," or "Juan Hernandez,"
and
JOSEFINA GARCIA-VARGAS,

    Defendants.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  _____ Yes  __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?  _____ Yes  __X__ No

                                  Respectfully submitted,

                                  JEFFREY H. SLOMAN
                                  ACTING UNITED STATES ATTORNEY

                          BY:    _____
                                  SIVASHREE SUNDARAM
                                  ASSISTANT UNITED STATES ATTORNEY
                                  Court ID No. A5501212
                                  99 N. E. 4th Street
                                  Miami, Florida 33132-2111
                                  TEL (305) 961-9430
                                  FAX (305) 536-4699

AO 91 (Rev. 01/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>IGNACIO ZARATE-ROSALES, a/k/a "Jose," or "Juan Hernandez," and JOSEFINA GARCIA-VARGAS,<br>*Defendant* | Case No. 09-2884-White |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of  6/1/09-6/7/09  in the county of  Miami-Dade  in the  Southern  District of  Florida , the defendant violated  18  U. S. C. §  1591(a)(1) , an offense described as follows:

the defendants did knowingly, in and affecting interstate commerce, recruit, harbor, transport, provide, obtain, and maintain by any means a person, that is, J.L., knowing, and in reckless disregard, of the fact that means of force, threats of force, fraud, coercion, and any combination of such means would be used to cause the person to engage in a commercial sex act, in violation of Title 18, United States Code, Sections 1591(a)(1), (b)(1), and 2.

This criminal complaint is based on these facts:
See attached Affidavit.

☒ Continued on the attached sheet.

*Complainant's signature*

U.S. ICE S/A Kristin Whelan
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  06/26/2009

*Judge's signature*

City and state:  Miami, FL   Magistrate Judge Patrick A. White
*Printed name and title*

## AFFIDAVIT

I, Special Agent Kristin M. Whelan, being duly sworn, depose and state the following:

1. Your Affiant, Kristin M. Whelan, has been employed as a Senior Special Agent with Immigration and Customs Enforcement (ICE) since 2003. Prior to that, your Affiant was employed as a Criminal Investigator and a Marine Enforcement Officer for U.S. Customs Service since 1991. Your Affiant is responsible for investigating numerous types of violations of Titles 18 and 21 of the U.S. Code, including narcotics, fraud, corruption, human smuggling, and human trafficking cases. Your Affiant has worked at least five human trafficking cases since 2004 and has attended several human trafficking conferences and trainings as well and is familiar with human trafficking investigations. Your Affiant works with other law enforcement officers who are also trained and familiar with human trafficking organizations and investigations.

2. The following information is based on your Affiant's background as a Special Agent, personal knowledge of the investigation, and information provided to your Affiant by other law enforcement officers regarding case specifics as well as details regarding human trafficking organizations in general. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the criminal complaint, it does not include all the details concerning this investigation.

3. On June 7, 2009, Homestead Police advised agents assigned to ICE in Homestead of a human trafficking victim rescued from an apartment in the downtown area. At approximately 11:00 a.m. on June 7, 2009, two patrol officers responded to a complaint about possible prostitution activities occurring in Unit #4 of a four-plex located at 52 NE 11th Street, Homestead, Florida 33030. When officers responded to the call,

1

however, a woman seated outside Unit #4 attempted to deflect officers. As officers began to follow the woman, however, they noticed two males fleeing from Unit #4. Officers returned to Unit #4, where they heard a commotion in the back area.

4.   Upon entering Unit #4, officers discovered a bedroom door standing open, inside which a woman stood naked from the waist down, later identified as victim J.L. There were three playing cards on a table in the room, which officers recognized as "tokens," or proof of payment for sexual services, based on their experience. Two of the playing cards were marked with the numbers "15" and "25," the former indicating a payment of $15.00 for oral sex and the latter, a payment of $25.00 for sexual intercourse, as understood by law enforcement officers familiar with human trafficking organizations. Officers also observed used condoms in the trash can, and multiple unused Lifestyle condoms on the night table. The officers contacted a Sergeant and the Victim Advocate assigned to the Human Trafficking Task Force, who transported the victim to a Rape Treatment Center. Doctors at the Rape Treatment Center found a wedge-shaped sponge lodged in J.L.'s vagina, the type of sponge typically used in the application of makeup.

5.   J.L. is 31 years old. She stated that she lived in Naples and answered an advertisement for work as a housekeeper. She first spoke with an unknown female (later identified as Josefina GARCIA-Vargas), who took her cell phone number and advised J.L. that someone would be contacting her. J.L. later received a call from a man she came to know as Jose. Jose was later identified by other individuals as Juan or Juan Hernandez and was ultimately identified by law enforcement as Ignacio ZARATE-Rosales (hereinafter referred to primarily as ZARATE). ZARATE told J.L. that she

would be employed as a housekeeper in the Naples area and arranged to meet J.L. at an outlet mall on Highway I-75 in Naples, Florida on June 1, 2009.

6. ZARATE and another unidentified male met J.L. at the outlet mall in Naples. They informed her that she would be going to work right away and that she would stay with them for a week. During the drive, J.L. asked where they were taking her. At this point, the unidentified male, who was sitting in the back seat with J.L., told her to shut up and brandished a black handgun.

7. Once they arrived at 52 NE 11th Street, Unit #4 in Homestead, Florida, J.L. was taken inside by the unidentified male. There was only a mattress on the floor, but J.L. noticed blood on the floor, women's clothing, and sheets covering the windows in the room. ZARATE took J.L.'s cellular phone and identification papers from her and told her she could not leave the house. J.L. was unable to leave the apartment because a gun was brandished at all times and an individual would always be on guard outside the room.

8. About one hour after her arrival, J.L. was forced to have sex with the first unknown male. Men would come to the room, remove their pants and underwear, use a condom, and force J.L. to perform oral sex or have sexual intercourse with them. If the men were having sexual intercourse, once they ejaculated inside of J.L., they would remove the used condom and throw it in the trash can. The unidentified male would frequently empty the trash can. When the victim tried to refuse having sex with the customers, the unidentified male would place a gun to J.L.'s head and threaten to kill her, telling her that she was a prostitute.

9. J.L. was held in the bedroom behind a locked door from June 1, 2009, until her rescue on June 7, 2009. J.L. was only allowed to exit the bedroom when using the shower or toilet. She was fed twice daily in the bedroom by either ZARATE or the unidentified male. While J.L. was performing sexual services, however, the door to the bedroom remained open while the unidentified male remained just outside watching as J.L. serviced approximately 10 to 15 males per day, with each male allotted about 15 minutes for sexual services, paying about $25 apiece. J.L. was allowed to call her boyfriend on June 6, 2009, but the conversation was monitored by one of the males.

10. The unidentified male forced J.L. to have sex with him about three times. ZARATE would come in and out of the apartment, telling the unidentified male to make sure J.L. did not get out of the apartment. Ultimately, J.L. was told that she would be moved to a different location in about a week.

11. Outside the apartment, Homestead Police seized a Toyota Camry, currently located at the secure Homestead Police Department impound lot, bearing Florida Tag #290 VQR, which the original complainant identified as the vehicle ZARATE used to transport prostitutes around the Homestead area. The vehicle is registered to R.M., later identified as an ex-girlfriend of ZARATE. Another individual admitted to knowing the individual who drove that Toyota Camry and that the driver would regularly drive ZARATE and his prostitutes wherever they needed to go. Among the items seized from inside Unit #4 were scraps of paper, including one with a cell phone number thought to belong to ZARATE, and Lifestyle condoms. Lifestyle condoms are not manufactured in the state of Florida. Unit #4 was then locked and

4

secured as a crime scene. Officers have since returned to Unit #4, ensuring that the apartment still appeared to be secure.

12. A neighbor in Unit #1 provided a camera flash card within which was a photograph the neighbor had taken of ZARATE and ZARATE'S girlfriend (later identified as Josefina GARCIA-Vargas). Pursuant to a consent to search form, approximately 10 photographs were downloaded from the camera flash card depicting various groups of people in different locations. Investigators presented J.L. with this stack of photographs, from which J.L. positively identified ZARATE as one of the men who forced her into prostitution.

13. Based on information received from sources, investigators discovered individuals who recognized ZARATE in the photograph, but knew him as Juan or Juan Hernandez. A Detective placed a call to ZARATE's cell phone number, as saved in a contact list on one of the sources' phones, and asked to speak to Juan. Upon confirmation that the Detective was speaking to Juan (or ZARATE), the Detective posed as a customer seeking a prostitute. ZARATE told the Detective they could not meet that night because "things are hot," but offered to meet the Detective at noon the following day. There was no attempt to ultimately meet ZARATE the following day as investigators believed he was in hiding.

14. One source provided the address of a driver who maintained a personal relationship with ZARATE. At the driver's home, his wife telephoned the driver and asked that he return home; however, the driver told his wife that he was in Broward County "buying a horse."

15. On June 9, 2009, investigators returned to the driver's home. The driver was present and ultimately told the Detective that when he stated he was "buying a horse," he had actually been driving ZARATE to a mobile home park in Lake Worth, Florida. The driver stated that ZARATE was hiding at the trailer owned by his ex-girlfriend R.M.

16. Upon going into the mobile home park, investigators saw ZARATE walking hand-in-hand with Josefina GARCIA-Vargas. ZARATE and GARCIA were placed under arrest. When asked where he was staying, ZARATE indicated a trailer a few streets away; however, since ZARATE had only recently arrived at the park, it was unclear if ZARATE was actually residing at that trailer. Investigators went to that trailer and were directed to R.M.'s trailer upon request.

17. When investigators knocked on R.M.'s trailer, they asked R.M. whether or not there were weapons in the house. R.M. indicated there was one. R.M. explained that it belonged to her ex-boyfriend Juan Hernandez (ZARATE) and that he had given it to her when she told him she could not provide ZARATE with a place to stay. R.M. indicated that the firearm was in a nightstand in her bedroom and provided investigators consent to search the nightstand. Officers discovered a .380 caliber semi-automatic handgun, magazine, and rounds in the stand. R.M. indicated that ZARATE stated that someone in Homestead was looking for him.

18. ZARATE and his girlfriend GARCIA were subsequently transported to the Homestead Police Department. Upon waiving her *Miranda* rights, GARCIA told investigators that she had been the female who answered the phone when J.L. first called regarding the housekeeping advertisement. GARCIA admitted that she had led J.L. to

believe that she would be working as a housekeeper. GARCIA stated that J.L. had been forced to work as a prostitute by ZARATE at gunpoint, while ZARATE conducted the prostitution transactions. J.L. begged them to stop; however, when J.L. began to menstruate, GARCIA made J.L. insert a makeup wedge sponge into her vagina to absorb the blood so J.L. could continue to perform sexual services. GARCIA recognized the firearm found in R.M.'s trailer as the one used by ZARATE to force J.L. to prostitute.

19. Upon waiving his *Miranda* rights, ZARATE provided his real name and admitted that he is known as Juan Hernandez as well. At the time of his arrest, ZARATE had a plastic Ziploc-type bag with scraps of red and green paper, upon which were written a cell phone number, believed to be one of ZARATE's. While walking with GARCIA in the trailer park, ZARATE was handing out the scraps of paper which, investigators believe, was to advertise his prostitution business. ZARATE denied having any involvement with J.L., but admitted that he owned the gun found in R.M.'s trailer and that he purchased it for $250.00 and carried it all the time.

20. Based on the information provided in this Affidavit, your Affiant respectfully submits that there is probable cause to believe that between on or about June 1, 2009 through on or about June 7, 2009, in the Southern District of Florida, ZARATE and GARCIA did knowingly, in or affecting interstate commerce, recruit, harbor, transport, provide, obtain, or maintain by any means a person, that is, J.L., knowing, or in reckless disregard, of the fact that means of force, threats of force, fraud, coercion, or any combination of such means would be used to cause the person, that is, J.L., to engage in a

7

commercial sex act, in violation of Title 18, United States Code, Sections 1591(a)(1), (b)(1), and 2.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
Kristin Whelan
Senior Special Agent, ICE
U.S. Department of Homeland Security

Subscribed and sworn to me on this ___ day of June, 2009

_____
PATRICK A. WHITE
UNITED STATES MAGISTRATE JUDGE